25 C.C.P.A. (Patents)

## In re CLARK.
### Patent Appeal No. 3978.

Court of Customs and Patent Appeals.
June 27, 1938.

James W. Clark, pro se.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

BLAND, Associate Judge.

A number of claims in appellant's application for a patent relating to an improvement in slack adjusters for use with air brake equipment on railroad cars, etc., including claim 1, the only allowed claim printed in the back of the record, having been allowed, appellant has appealed here from the decision of the Board of Appeals affirming that of the Primary Examiner in rejecting claims 12 and 19. Said rejected claims, and allowed claim 1, follow:

"12. In an air brake equipment, the combination with a push rod and a live cylinder lever operatively connected therewith, an operating mechanism, means for imposing movement upon said mechanism upon abnormal travel of said push rod, a second lever, said second lever being interposed in the brake rigging and operatively connected thereto, means for holding said second lever for swinging movement, means for imposing the movement of said mechanism upon said second lever, a third lever, said third lever being interposed in the brake rigging and supported at one end portion for swinging movement, means for operatively connecting the opposite end portion of the third lever to the second lever, an operative connection between the third lever and the live cylinder lever, aforesaid movement imposed by said mechanism upon the second lever effecting the movement of the third lever and the live cylinder lever to take up slack in the brake rigging and to maintain a substantially uniform brake piston travel, and means coacting with the second lever to maintain the second and third levers in proper positions and to overcome the inertia of said levers while the brakes are being released."

"19. In combination with a brake rigging including levers interposed in the central portion thereof and operatively connected therewith, an operative connection between said levers, a push rod of a brake equipment, a mechanism positioned to one side of said rod and operatively connected thereto, an operative connection between said levers and the mechanism, means operating upon abnormal travel of said push rod effecting the movement of said mechanism, said levers being adapted to transmit the movement of said mechanism whereby slack is taken out of said rigging with substantially equal effectiveness in both end portions thereof, and a substantially uniform brake piston travel is maintained.

"1. In an air brake equipment, the combination with a push rod and a live cylinder lever operatively connected therewith, a mechanism, means for imposing movement upon said mechanism upon abnormal travel of said push rod, a second lever, said second lever being interposed in the brake rigging, means for holding said second lever for swinging movement, means for imposing the movement of said mechanism upon said second lever, a third lever, said third lever being interposed in the brake rigging, said third lever being supported at one end portion for swinging movement, means for operatively connecting the opposite end portion of the third

lever to the second lever, an operative connection between the third lever and the live cylinder lever, aforesaid movement imposed by said mechanism upon said second lever effecting movement of the third lever and the live cylinder lever to take up slack in the brake rigging, and means coacting with the second lever to maintain the second and third levers in proper positions and to overcome the inertia of said levers while the brakes are being released."

The tribunals below rejected claim 12 upon the ground that the structure specified in the claim is in substance the same as that in allowed claim 1, holding that the additional language used in claim 12 over that found in claim 1 was in the statement of the functions of the elements found in both the claims. In affirming the decision of the Primary Examiner as to claim 12, the board said:

"Appellant presents an automatic means for adjusting a linkage of a railway brake rigging to take up the slack due to the wear of the brake shoes or other parts. There are two claims under rejection. Claim 12 is held to be substantially the same as a claim already allowed and numbered 1. Appellant points to certain distinctions of these claims, one of which is that in referring to the second lever in claim 12 it is recited as interposed in the brake rigging and *operatively connected thereto.* Claim 1 does not state that the second lever is operatively connected to the brake rigging but obviously there would be no purpose in such lever unless it was connected operatively to the brake rigging and such construction must be read into claim 1. The principal distinction in the claims as we see it, is that claim 12 recites:

"'An operative connection between the third lever and the live cylinder lever, aforesaid movement imposed by said mechanism upon the second lever effecting the movement of the third lever and the live cylinder lever to take up slack in the brake rigging and *to maintain a substantially uniform brake piston travel.*'

"This italicized portion of this expression is omitted in claim 1.

"Appellant concedes that the two functions, that is, of taking up slack in the brake rigging and maintaining a substantially uniform brake piston travel, are related, the taking up of the slack being for the purpose of maintaining a uniform brake piston travel or at least results in this second function. Structurally the claims seem to be the same. Appellant urges that claim 12 is more definite and complete than claim 1 and if that be his opinion he can cancel claim 1 and adopt claim 12. He has a choice of either of these claims and it is obvious they distinguish merely in a statement of function, that is, in one claim one function is recited and in the other claim an additional function is recited. If the structure had to be changed to carry out the two functions, the situation would be different. We hold the examiner warranted in his rejection."

Claim 19 was rejected on the ground that the board was not convinced that the claim clearly and patentably distinguished over the construction described in Fig. 1 of Clark's prior patent, 1,663,623, of March 27, 1928. The appellant in this court especially urges that the board is in error with reference to claim 19, since he claims it has not given proper consideration and effect to the language of the claim which calls for "In combination with a brake rigging including levers interposed in the central portion thereof and operatively connected therewith." It is argued by appellant in his brief that the board has misconceived the inventor's meaning and intended application of the term "brake rigging"; that distinction must be made between the brake rigging and the adjusting mechanism; that in the patent the installation of the slack adjuster is with the entire rigging while in rejected claim 19 the installation of the slack adjuster is required to be entirely within the center of the rigging. The board answered this contention as follows:

"As to claim 19, we need consider only the first portion of the claim:

"'In combination with a brake rigging including levers interposed in the central portion thereof and operatively connected therewith. * * *'

"The question is whether this claim reads on the construction of the Clark patent (Fig. 1). Appellant maintains that the brake rigging in the patent does not include the levers 23, 26 and the rods 28, but these elements are solely for the purpose of taking up the slack. In the present construction the slack is taken up through levers 43, 47 which are directly

connected to the draft rigging. Giving a technical meaning to the term 'brake rigging' it is possible claim 19 would be held to distinguish over the construction in Fig. 1 of the patent but this claim is obviously broadly drawn and unless the terms of the claim are given a very limited meaning, it clearly reads on the patent. It seems to us if it were appellant's purpose to distinguish from Clark, he could have modified claim 19 to be more definite as to this distinction. We are not convinced the claim clearly and patentably distinguishes over the Clark Fig. 1 construction."

We are in agreement with the decision of the board as to claim 19 and approve its statement that if appellant's purpose was to distinguish from his patent, he could have so modified claim 19 as to definitely have done so. Like the board, we do not believe that claim 19 distinguishes over Fig. 1 of the Clark patent. We think that the allowance of the claim would be an extension of appellant's existing patent monopoly.

As to claim 12, we find ourselves in disagreement with the views expressed by the tribunals below to the effect that the claim was properly rejected on the ground that it is substantially the same as allowed claim 1. Both tribunals held that the claim was allowable if claim 1 was not allowed, and that applicant had the choice of either of the claims. The so-called functional elements in claim 12 are accurately pointed out in the board's decision. The law is well settled that the mere addition of the statement of the function of an element does not necessarily make that claim patentable over one in the prior art where the same structure is described without the functional element. It is also well settled, however, that when claims find their way into a patent and protection is sought in the equity courts against infringement, functional statements frequently are resorted to for purposes of interpretation, and are often regarded as limitations which may be controlling in the proceedings. We are not prepared to say that the functional phrase "to maintain a substantially uniform brake piston travel" does not have its proper place in the involved claim. It may be that the elements of claim 1 are expressed in such a way that such a structure might exist without performing the function of maintaining a substantially uniform brake piston travel. We are unable to say that appellant by this limitation has not narrowed or limited his invention.

The tribunals below have not rejected appellant's claim 12 upon the ground that a multiplicity of claims were presented in his application. No complaint in this respect has been made, and for this reason the case of In re Randell, 67 F.2d 933, 21 C.C.P.A., Patents, 782, should not be regarded as controlling. See In re Deakins, 96 F.2d 845, 25 C.C.P.A., Patents, —, decided May 31, 1938.

It seems to us that where there is not a multiplicity of claims and where it is obvious that an applicant has not been unduly and unnecessarily verbose in defining his invention in his claims, he ought to be given a reasonable latitude of expression. If claim 12 differs in no respect from claim 1 and yet is patentable, under the circumstances of this case (and we are confining ourselves to the particular facts here involved) we can see no harm in its allowance. Moreover, we are not convinced that the functional statements contained in claim 12 may not lend value to appellant's patent (when it issues) in the protection which he may hereafter seek.

As we understand it, under the patent law and the prevailing Patent Office practice, an inventor, where it is difficult to express his invention in the form of claims, has the right to, and ordinarily for his own protection does, express the same invention in more than one claim. If by so doing he more clearly defines his invention and does not by undue multiplicity obscure the same, he is acting within the rights granted and the duties required by the patent laws. Robinson on Patents, Vol. 2, § 529, and cases cited; In re McCullough, 1927 C.D. 12. Unquestionably, advantage results to all concerned in proper cases if the same invention is defined by different forms of expression which are intended to describe the same subject matter. In this way, misunderstanding and misinterpretation are frequently avoided. This is not a case where the record shows that claim 1 and other claims, all involving the same subject matter, differently expressed, had been allowed, and claim 12 rejected on the ground of multiplicity. Nor is it a case where all the claims of appellant's application have been rejected on the ground that by multiplicity

632

of claims applicant has not complied with the patent statutes by distinctly claiming his invention. Claim 12 was rejected upon the ground that a single claim, claim 1, states all that is inventive in claim 12. As far as this record shows, no latitude of expression whatever, other than that found in claim 1, was allowed.

The Solicitor for the Patent Office has pointed out that in Re Einstein, 46 F.2d 373, 18 C.C.P.A., Patents, 885, this court said (page 374): "* * * Two distinct claims for the same substantial matter, differing only in nonessentials, cannot both be sustained. * * *"

It was our conclusion there that since one claim called for an "abutment" and the other claim called for a "stop," and since both claims referred to the same thing and had the same purpose, both claims should not be allowed. The situation is different here. The functional statement may have a possible importance in limiting the scope of appellant's invention.

A case which seems to be in point is In re Sagle, 40 F.2d 976, 17 C.C.P.A., Patents, 1131. In that case, an appealed claim had been rejected on the ground that there was no patentable distinction between it and an allowed claim. Appellant there, as here, stressed the importance of the difference in the claims, and notwithstanding the contention of the solicitor that the language in the rejected claim was unnecessary, this court reversed the decision of the board and said (page 977): "* * * We can see no harm in the allowance of this claim and think probably the same may serve to more clearly define applicant's disclosure and, therefore, should have been allowed."

By our conclusion here reached as to claim 12, it is not intended to suggest that the expression of a function of a recited element would make a nonpatentable claim patentable in this kind of case. Numerous authorities might be cited, however, where functional statements in claims were regarded as vital to the patent or were controlling in determining the absence of infringement. Interesting cases on the effect of functional statements might be cited such as Automatic Appliance Co. v. McNiece Motor Co., 8 Cir., 20 F.2d 578; Linville et al. v. Milberger, D.C., 29 F.2d 610, affirmed 10 Cir., 34 F.2d 386; and Beacon Folding Mach. Co. v. Rotary Machine Co. et al., 1 Cir., 31 F.2d 646.

We think that claim 12 should have been allowed and the decision of the Board of Appeals as to it is reversed; as to claim 19 it is affirmed.